THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID JACQUITH, Defendant-Appellant.

First District (2nd Division)   No. 83—2063

Opinion filed November 27, 1984.

Thomas M. Breen, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Thomas D. Bilyk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

David Jacquith, defendant, was charged by complaint with driving under the combined influence of alcohol and drugs (Ill. Rev. Stat. 1982, ch. 95½, par. 11—501(a)(4)), improper display of a license plate, improper lane change and disorderly conduct. During a jury trial, at the close of the State's case in chief, the trial court directed a finding of not guilty of disorderly conduct. The jury found defendant guilty of the remaining charges. Defendant was fined $550. Following sentencing, the trial court entered a finding of probable cause on the State's affidavit in which it was alleged that defendant refused to take a breathalyzer test. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1(c).) Defendant appeals his conviction for driving under the combined influence of alcohol and drugs,[1] contending (1) that the State failed to prove beyond a reasonable doubt that defendant was guilty of driving while under the combined influence of alcohol and drugs; (2) that the defendant was denied a fair trial by (a) the admission of speculative evidence regarding drugs and their effects; (b) testimony implying that he chose to remain silent following his arrest; (c) the trial court's restricting evidence intended to show bias on the part of the arresting officer; and (d) the trial court's restrictions concerning evidence of blood and urine tests performed at Lutheran General Hospital after defendant left the police station following his arrest. Defendant further contends on appeal that the trial court erred in entering a finding of "probable cause."

---

[1]Defendant raises no argument with regard to his other convictions.

Prior to trial, the State offered two motions *in limine*. The first requested the trial court to preclude defendant from introducing evidence of a pending Federal civil rights suit filed by defendant and Val G. Jacquith, defendant's father, against certain officers of the Glenview police department, unless it was first established that the officers involved in defendant's arrest had prior knowledge of the civil rights suit and of defendant's involvement in that suit. The second motion *in limine* requested the trial court to preclude defendant from introducing evidence of blood tests performed by private physicians subsequent to defendant's arrest. The trial court reserved ruling on the motions.

At trial, during opening statements to the jury, defense counsel referred to "a previous lawsuit" as well as to a "complete blood test" taken at "Lutheran General Hospital." Objections to both remarks were sustained.

Glenview police officer William Golden testified: on March 13, 1983, at approximately 3:45 p.m., a Corvette with a "novelty license plate" passed his police car and made four subsequent lane changes. Officer Golden curbed the Corvette and requested defendant's driver's license. He had a conversation with defendant and instructed him to remain in his car. While sitting in his squad car, writing a ticket, Golden saw defendant "stumble" out of the Corvette and approach the squad car. Golden smelled alcohol on defendant's breath and, noticing defendant's slurred speech, asked him to perform balance, walking, and finger-to-nose tests. Golden had been trained at the police academy in "recognizing drunk drivers" and in administering standard performance tests. Golden described the defendant as unable to balance, staggering, and unable to touch his right finger to his nose. Office Golden arrested defendant, read him his *Miranda* rights and his "breathalyzer rights." Defendant stated he would not take any tests.

On direct examination, Officer Golden stated that when he asked defendant if he was under the influence of alcoholic beverages, the defendant "used his right to remain silent." Defense counsel's objection was sustained and the jury instructed to disregard the testimony. On cross-examination, Officer Golden clarified his previous testimony, relating that when he asked the defendant if he was under the influence of alcoholic beverages the defendant replied, "No comment."

Officer Golden had been a police officer for 3½ years, and, on the basis of defendant's hyperactivity, his general appearance, and his speech, Golden concluded that defendant was under the influence of "something" in addition to alcohol. Because of this, Golden requested

that defendant submit to a blood analysis which, according to Golden, defendant refused.

Village of Golf police officer Joseph Gilbrick testified to the following: at the time of defendant's arrest, Gilbrick was driving in his private automobile with a friend, Melissa Stahl, when he saw Officer Golden stop defendant. At the time, defendant was out of his car, waving his arms frantically. When Golden "flagged him down" Gilbrick pulled in behind Golden's squad car to assist with the arrest. Defendant's shirt was hanging out, he appeared "messy," and had a "strong odor of alcohol on his breath." When Gilbrick asked defendant if he had had any alcoholic beverages, the defendant replied, "a couple." Defendant made several comments with reference to an alleged Federal court order "prohibiting his arrest." It was Gilbrick's opinion, based on his training at the police academy in the areas of drug and alcohol abuse, as well as in making over 100 arrests for "driving under the influence," that the defendant was under the influence of both alcohol and drugs at the time of his arrest.

The State's final witness, Melissa Stahl, described defendant's actions and stated, in contradiction to the police officers, that both officers had to assist defendant in getting out of his car. Initially she denied knowing Officer Golden. On cross-examination, however, she stated she had attended Golden's wedding.

Defendant testified to the following: no tests were offered to him at the police station following his arrest, he did not refuse the breathalyzer test, and he, in fact, requested any tests which would prove he was not under the influence of alcohol or drugs at the time of his arrest.

Defendant had not consumed any alcoholic beverages or used any drugs on the day of his arrest. He had brunch with his parents at a restaurant called "Great Godfrey Daniel's" on March 13, 1983, and then visited "his father's office." Later he had lunch with his parents at a restaurant called "Hasty Tasty," after which they visited "Computer Land." At approximately 3:15 p.m. he left home and picked up his friend Craig Mirsky.

Defendant stated that at the time of his traffic stop his car displayed a University of Kentucky license plate, but that he had his Illinois license plate inside his front windshield. It was his opinion that he performed the field tests without any difficulty. He stated that he had an ulcer and consequently did not drink alcoholic beverages.[2].

---

[2]He admitted on cross-examination, however, that he drank carbonated beverages against his doctor's advice.

Craig Mirsky testified as follows: he was with defendant at the time of his arrest. Defendant had picked him up at his home to go shopping for shoes. Defendant was not under the influence of alcohol or drugs. Defendant had no problem accomplishing the performance of field tests. He heard Officer Golden ask defendant, "Do you think you're so rich you can sue everybody?"

Defendant's parents testified as follows: They had gone to brunch with the defendant on the day in question and were with defendant all that day until he left to pick up Craig Mirsky. Defendant was not under the influence of alcohol or drugs. Mrs. Jacquith testified that the defendant did not drink alcoholic beverages because he had an ulcer. Mr. Jacquith stated that while at the police station his son requested to take "any and all" alcohol-related tests.

Defendant further testified that after leaving the police station with his parents he went directly to Lutheran General Hospital in Park Ridge to have blood and urine tests. Although defendant was not allowed to introduce the tests themselves into evidence, Dr. Paul Bolton testified that he worked in the hospital emergency room on March 13, 1983, when he met defendant at approximately 7:30 p.m. In his opinion, defendant was not drunk or under the influence of drugs at that time. He drew blood and took a urine sample from defendant. The trial court sustained the State's objection to Dr. Bolton's testimony regarding the result of tests performed by other hospital personnel. Bolton testified that he had training both in medical school and during his hospital residency on the effects of drugs in the human body. In explaining his conclusion that defendant was not under the influence of drugs when he observed him at the hospital, Dr. Bolton described the effects of marijuana, amphetamines and valium. He also discussed the various tests used to detect the presence of drugs in the body.

Dr. Bernard Block testified as follows: He was the defendant's physician. He had reviewed the pathology reports of blood and urine tests performed on defendant at Lutheran General Hospital on March 13, 1983. It was Dr. Block's opinion that the defendant was not under the influence of drugs when the tests were performed. He read a list of drugs for which the defendant had been tested: amobarbital, aphrobarbital, barbital, butabarbital, diazepam, and escolorinnol. On cross-examination, Dr. Block testified that phenobarbital and valium are sometimes prescribed for ulcers. Although defendant suffered an ulcer condition about one year earlier, Dr. Block did not recall if he had ever prescribed any medication for defendant's ulcer.

In rebuttal, the State called Dr. Joerg N. Pirl, a toxicologist em-

ployed by the Illinois Department of Health, who testified regarding the tests which could be performed in order to detect the presence of alcohol or drugs in a person's blood or urine. In Dr. Pirl's opinion, the tests performed on defendant at Lutheran General were "incomplete." Over the objection of defense counsel, Dr. Pirl answered several hypothetical questions by the State regarding the effects on an individual of combinations of alcohol and barbiturates.

Following closing arguments, the jury found defendant guilty of driving under the influence of alcohol and drugs, improper lane change and improper display of a license plate. On July 22, 1983, defendant was fined $500 for driving under the influence of alcohol and drugs, and $25 each for improper display of a license plate and improper lane change. At the same hearing, the trial court entered a finding of "probable cause" with regard to the State's affidavit that defendant had refused to take a breathalyzer test. Defendant's motion for a new trial was denied. Defendant appeals his conviction for driving under the influence of alcohol and drugs, and the finding of probable cause by the trial court.

## I

Since we find it dispositive of the first two issues raised on appeal, we address initially defendant's contention that the State failed to prove beyond a reasonable doubt that he was guilty of driving while under the combined influence of alcohol and a drug or drugs. The relevant section of the Illinois Vehicle Code provides:

"Sec. 11—501. Driving while under the influence of alcohol, other drug or combination thereof. (a) A person shall not drive or be in actual physical control of any vehicle within this State while:

1. The alcohol concentration in such person's blood or breath is 0.10 or more based on the definition of blood and breath units in Section 11—105.2;

2. Under the influence of alcohol;

3. Under the influence of any other drug or combination of drugs to a degree which renders such person incapable of safely driving; or

4. *Under the combined influence of alcohol and any other drug or drugs to a degree which renders such person incapable of safely driving.*" (Emphasis added.) Ill. Rev. Stat. 1982, ch. 95½, par. 11—501(a).

Defendant was charged under section 11—501(a)(4). This section of the statute clearly requires that to convict, the State must prove that

defendant was under the influence of *both* alcohol and another drug or drugs.

■■ Courts are often confronted with the task of weighing conflicting testimony where a person is alleged to be under the influence of alcohol. It is well established that even a layman is competent to testify regarding intoxication from alcohol, since such observations are within the competence of all adults of normal experience. (*People v. Bobczyk* (1951), 343 Ill. App. 504, 99 N.E.2d 567.) The experience of a police officer and the number of times he has arrested persons charged with driving "under the influence" are important factors in determining the sufficiency of his testimony. (*People v. Wheatley* (1972), 4 Ill. App. 3d 1088, 283 N.E.2d 279.) The testimony of an arresting officer alone if qualified can be enough to sustain a conviction for driving while under the influence of intoxicating liquor. *People v. Fowler* (1981), 98 Ill. App. 3d 202, 423 N.E.2d 1356.

In *People v. Greenberg* (1967), 79 Ill. App. 2d 288, 224 N.E.2d 577, where defendant's conviction for driving under the influence of alcohol was upheld on review, the State's case consisted of the testimony of a single police officer who described the defendant's appearance as follows: strong odor of alcohol, pale face, mussed clothing, bloodshot eyes, unsure balance and walking, slurred speech and erratic behavior. The police officer testified that he had arrested over 40 intoxicated motorists and had observed "thousands" of people whom he believed to be under the influence of alcohol. The appellate court affirmed defendant's conviction, despite the testimony of a physician that defendant had previously exhibited symptoms of a cerebral concussion which a layman might confuse with the symptoms of intoxication.

■■ Where testimonial evidence is conflicting it is within the province of the jury to determine credibility. (*Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 404 N.E.2d 1026.) Where the guilt or innocence of the defendant depends upon the credibility of conflicting testimony, the finding of the trial court or jury should not be disturbed on review. (*People v. Cool* (1962), 26 Ill. 2d 255, 186 N.E.2d 254.) Where, however, the record clearly reflects reasonable doubt, it is the duty of the appellate court to reverse. *People v. Flores* (1976), 41 Ill. App. 3d 96, 353 N.E.2d 131.

Our review of the record in the instant case suggests that if defendant had been charged with only a violation of section 11—501(a)(2), the testimony of the two police officers, in view of their training and experience, would have been sufficient to support a conviction for driving under the influence of alcohol. The fact that

defendant offered conflicting testimony would have presented merely an issue of credibility to be determined by the jury.

Since, however, defendant was here charged specifically under section 11—501(a)(4), which declares it a crime to drive under the "combined influence of alcohol and other drug or drugs," the State was required to prove beyond a reasonable doubt not only that at the time of his traffic stop defendant was under the influence of alcohol but that he was under the influence of another drug as well.

Although we are unable to find Illinois cases addressing the issue of proving intoxication by drugs while driving, other jurisdictions have dealt with the degree of evidence necessary to sustain such a conviction. In *People v. Smith* (1967), 253 Cal. App. 2d 711, 61 Cal. Rptr. 557, the court rejected defendant's contention on appeal that the trial court had erred in allowing a police officer to offer his opinion with regard to whether defendant was under the influence of drugs when arrested. The court stated that scientific evidence is not always necessary to establish whether a defendant is under the influence of a drug; as in other criminal matters, circumstantial evidence can at times support a conviction. The testimony of a police officer who has been qualified by the court as an expert may well be sufficient.

In *Smith*, the police officer whose testimony was found sufficient to sustain defendant's conviction was a narcotics officer, had 2½ years' experience, had made between 500 and 600 narcotics-related arrests, and had examined narcotics addicts and observed them in all stages of addiction and debilitation. In addition, he testified that he had previously had 2½ years of "premedical training." The officer testified that the defendant had been driving eight miles an hour, causing cars to "back up" behind him, his vehicle was weaving, he was slumped over the wheel, he had slurred speech, and he was drowsy almost to the point of passing out. After stopping the defendant, the officer observed that scar tissue "followed the veins up the defendant's arms," his pupils were "pin-pointed" and did not expand or contract when exposed to light, and that, although the defendant claimed to have been drinking, there was no odor of alcohol on his breath.

In *Smithart v. State* (Tex. Crim. App. 1974), 503 S.W.2d 283, the Texas Appellate Court held that the opinion testimony of a police officer with only a few months of experience was insufficient to support defendant's conviction for driving while under the influence of drugs.

Other Texas cases involving more experienced police officers have found them competent to testify whether a defendant was under the

influence of drugs. In *Hudson v. State* (Tex. Crim. App. 1971), 453 S.W.2d 147, the court found that an officer who had "many years of experience" and had often dealt with people under the influence of drugs was qualified to testify that defendant was under the influence of drugs.

In the California case and in both Texas cases, the courts weighed the experience of the officers to determine whether they were competent to testify as to a defendant's being under the influence of drugs when arrested. The principal standard appears to be the officers' experience with drug users.

In the case at bar, neither Officer Golden nor Officer Gilbrick testified that they had previous experience with narcotics users, nor that they had made any arrests for driving under the influence of drugs. Officer Gilbrick stated only that he had made over 100 arrests for "driving under the influence," and that he had been trained at the police academy in "the areas of alcohol and drugs." Officer Golden, who claimed no experience with drug arrests, testified that he believed, based on defendant's behavior and appearance, that defendant was under the influence of alcohol and "some other influence." This is not the level of expertise that has been held necessary in those jurisdictions which have addressed the issue of competent evidence to sustain a conviction for driving under the influence of drugs. Yet our record reflects that this was the only evidence here offered by the State.

■ In our opinion, the testimony of the police officers in the instant case was insufficient to support a finding that the defendant operated a motor vehicle while under the influence of drugs. As heretofore stated, where reasonable doubt is evident, it is the duty of the appellate court to reverse a jury verdict. (See *People v. Flores* (1976), 41 Ill. App. 3d 96, 353 N.E.2d 131.) Thus, defendant's conviction for violating section 11—501(a)(4) of the Illinois Vehicle Code (Ill. Rev. Stat. 1982, ch. 95½, par. 11—501(a)(4)) must be reversed.

II

Defendant also contends that the trial court erred in entering a finding of probable cause on the State's affidavit in which it was alleged that defendant refused to undergo a breathalyzer test as required by section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1). Defendant premises this argument on his claim that "no hearing" was held in this matter; instead, the trial court merely entered its finding of probable cause at the conclusion of defendant's sentencing hearing.

Our review of the record reveals the following: At the close of

defendant's sentencing hearing, the prosecution answered "ready" on the implied consent hearing. The defendant's attorney replied, "I thought we had the implied consent [hearing] along with the trial." The court stated the hearing had not taken place. The prosecution stated it would stipulate to the events at trial. The following colloquy ensued:

"MR. SCHOEN [defendant's attorney]: If you want a hearing on it, we will.

THE COURT: To dispose of it, we have to have a hearing.

MR. SCHOEN: It was my understanding that we had that evidence, and that the hearing was going in with the trial. That is my understanding.

THE STATE: Judge, I will be very glad—.

THE COURT: If that is your understanding?

THE STATE: I will be glad to stipulate to the evidence at trial. That is fine with me.

THE COURT: Anybody wish to add anything?

MR. SCHOEN: No.

* * *

THE STATE: Other than the facts, Judge, we will enter the form as part of the State's evidence.

MR. SCHOEN: What form is that counsel?

THE STATE: That is the implied consent form. That is part of the court file.

THE COURT: Just part of the court file. Finding of probable cause."

From this colloquy it is evident that defense counsel did not request, nor was he denied, a separate hearing on probable cause. Defendant is consequently estopped from assigning this as error on appeal. (*People v. Mireles* (1979), 79 Ill. App. 3d 173, 398 N.E.2d 150.) Moreover, parties often stipulate that the same evidence offered at trial be considered in a subsequent implied consent hearing. See, *e.g., People v. Bafia* (1983), 112 Ill. App. 3d 710, 445 N.E.2d 878.

The issues to be determined at an implied consent hearing are:

"[W]hether the person was placed under arrest for an offense as defined under Section 11—501 of this Code ***; whether the arresting officer had reasonable grounds to believe that such person was driving *** under the influence of alcohol, other drug, or combination thereof; and whether such person refused to submit and complete the test or tests upon the request of the law enforcement officer." Ill. Rev. Stat. 1982, ch. 95½, par. 11—501.1(c).

■ An implied consent hearing is civil in nature. (*People v. Malloy* (1979), 76 Ill. 2d 513, 395 N.E.2d 381.) Therefore the State must prove by only a preponderance of evidence that the arrest was made, that the officer had reasonable grounds to make the arrest, and that the defendant refused the test when offered. (*Village of Park Forest v. Angel* (1976), 37 Ill. App. 3d 746, 347 N.E.2d 278.) The fact that defendant has been found not guilty of the underlying offense does not preclude a subsequent finding of probable cause. *People v. Bafia* (1983), 112 Ill. App. 3d 710, 445 N.E.2d 878.

Whether the State has met its burden of proof is a question of fact to be determined by the trial judge. The findings of the trier of fact in this regard will not be overturned on appeal unless such findings are palpably against the manifest weight of the evidence. (*Village of Park Forest v. Angel* (1976), 37 Ill. App. 3d 746, 347 N.E.2d 278.) A judicial finding of fact is not against the manifest weight of the evidence unless from the record an opposite conclusion is clearly evident.

■ In the instant cause, the evidence adduced at trial adequately supports the trial court's finding of probable cause, Officer Golden stopped defendant, who allegedly was driving erratically, the evidence established that Golden had reasonable grounds to believe that defendant was driving in a manner or condition prohibited by section 11—501, and, according to Golden, defendant refused to take the breathalyzer test. Although defendant contended that he was refused an opportunity to take the test, the trial court found the State's testimony more credible. From our review of the facts in this case, an opposite conclusion is not "clearly evident."

For the reasons hereinabove set forth, the defendant's conviction of driving under the combined influence of alcohol and drugs is reversed, and the trial court's finding of probable cause that the defendant refused to take a breathalyzer test is affirmed.

Reversed in part; affirmed in part.

HARTMAN, P.J., and STAMOS, J., concur.