THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOEL R. SANDERS, Defendant-Appellee.

Second District   No. 2—86—0357

Opinion filed May 18, 1987.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE HOPF delivered the opinion of the court:

The plaintiff, the State, appeals from the judgment of the circuit court which granted the request of the defendant, Joel R. Sanders, to rescind the summary suspension of his driving privileges pursuant to section 11—501.1 of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). On appeal, the State contends that there is no evidence which supports the trial court's action to rescind the defendant's statutory summary suspension. For the reasons set forth below, we reverse the judgment of the circuit court.

On March 10, 1986, the defendant was charged with driving while under the influence of alcohol in violation of section 11—501(a) of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)). On that date he was also given written notice of the summary suspension of his driving privileges pursuant to section 11—501.1 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). On March 21, 1986, the defendant filed a request for a judicial driving permit. He also filed a request for a rescission hearing pursuant to section 2—118.1 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1) on the grounds that: (1) he had not been placed under arrest as defined in section 11—501; (2) the arresting officer did not have reasonable grounds to believe that the defendant was driving under the influence of alcohol; (3) the arresting officer failed to warn the defendant that his driver's license would be subject to suspension if he submitted to a breathalyzer test and that test disclosed an alcohol concentration of .10 or more; (4) the test to which the defendant did submit failed to disclose an alcohol concentration level of .10 or more at the time the defendant operated a motor vehicle; and (5) the tests were not properly administered.

On April 8, 1986, the court heard argument on the two matters. The trial court denied the defendant's request for a judicial driving permit. The remainder of the hearing concerned the defendant's request for rescission of the summary suspension.

The defendant testified that on March 10, 1986, at approximately 2:30 a.m. he was stopped while driving his car. He was not operating his car in an unusual or illegal manner. At that time, the police officer arrested the defendant, placed him in the squad car, and indicated that the arrest was for battery. The officer did not ask the defendant to perform any field sobriety tests at the scene. When the defendant arrived at the police station the officer asked him to perform several sobriety tests, which the defendant reported he performed "well." The officer also requested that the defendant take a breathalyzer test. First, however, the officer warned the defendant of what would occur if he refused to take a breathalyzer test, as well as if he failed the breathalyzer test. The defendant also stated that before he took the breathalyzer test the police officer told him that he was under arrest for driving while under the influence of alcohol. After the defendant completed the breathalyzer test, he saw the reading, which he noted was .10, yet believed was inaccurate. At the hearing the defendant also stated that he did not feel he was under the influence of alcohol at the time of the test.

On cross-examination the defendant admitted that he had consumed four or five beers earlier in the evening. He also stated that he was at a young lady's house earlier in the evening, but denied grabbing a telephone receiver from her as she attempted to call the police for slapping her. With respect to the breathalyzer machine's accuracy, the defendant stated as follows:

"A. He says blow into the machine until the green light goes out and I blew and it went out and I took the hose away and the light came back on and he said blow again and I requested to have it done over and then he said no it can't be done.

Q. Run that by me again.

A. I blew into the hose and he said blow it until the green light goes out. It went out. I took the hose away and the light came back on. He said blow again and I had to blow some more. And then you know it went out and I sat down. Can we do that over, that didn't seem right and he said no."

The defendant stated that "something seemed wrong." After he completed the test the defendant was charged with battery, as well as driving under the influence of alcohol.

The State moved to dismiss the defendant's request for rescission

on the basis that the defendant had not sustained his burden of proof. The trial court denied the motion.

Officer Daniel Prather testified that on March 10, 1986, at approximately 2 a.m. he received a radio communication which directed him to the home of Chris J. Kolb. When he arrived at the residence, Kolb told Officer Prather that she had been battered by the defendant. She further stated the defendant told her that he had been drinking that night. He also drank some whiskey in her presence. A few minutes later Officer Prather stopped the defendant's vehicle and placed the defendant under arrest for battery. At this time Prather also noticed that the defendant had trouble standing up straight and swayed back and forth. At the station Prather requested that the defendant perform sobriety tests. Prather stated that after he observed the defendant perform the tests, it was his opinion that the defendant was under the influence of alcohol.

After Prather arrested the defendant for driving under the influence of alcohol, Prather informed the defendant of his rights. After being informed of his rights, the defendant agreed to take the breathalyzer test on an intoxilyzer machine which Officer St. Ores then conducted in Prather's presence. Prather stated that he observed nothing unusual about the operation of the intoxilyzer machine and that St. Ores complied with the Illinois Department of Public Health Rules relating to breath alcohol testing. Prather described the giving of the test as follows:

"A. Officer St. Ores asked Mr. Sanders to step over to the machine. He removed the mouth piece from a sealed plastic bag, placed it onto a tube that went into the machine, handed this to Mr. Sanders, explained to him that he should blow into the machine as long as he could or until a light went out. I forget which color the light is. He told him that if the light didn't go out just to take another deep breath and continue to blow into the machine as the machine does retain—this particular machine retains the samples and that as long as he keeps blowing into it it will keep collecting the sample amount until it has enough to make the analysis."

Prather stated that he observed the defendant blow into the machine and the machine produced a readout.

On cross-examination Prather stated that he was not a certified intoxilyzer operator. He also stated that he observed the intoxilyzer test but was unable to observe whether the light on the machine went off and came back on again from where he stood. On redirect Prather stated that when the light on the machine goes off, the machine has

obtained enough of a sample to register a reading and the machine must have an adequate size sample to make an analysis.

At the conclusion of the hearing the court made several findings: (1) that the defendant was placed under arrest for driving under the influence of alcohol; (2) that the officer had reasonable grounds to believe that the defendant was driving under the influence; and (3) that the defendant provided a test sample. The court took the issue of whether the intoxilyzer functioned properly under advisement. In a written order the court determined that the defendant had proved by a preponderance of the evidence that while he had provided a test sample, the intoxilyzer machine had malfunctioned. Specifically, the court found that: (1) the defendant had blown into the machine until a light went off as instructed; (2) as soon as the defendant removed his mouth the light reappeared; and (3) the defendant's second blow on the machine immediately thereafter registered .10. Thus, the court concluded, in view of the fact that the defendant had met his burden of proof that the machine was malfunctioning, and the State had presented no testimony in rebuttal that the machine did not malfunction, the court would grant the request for rescission. The State then filed this timely appeal. We note that the defendant has not filed a brief in this matter, but we will consider the merits of the State's contention. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

Section 2—118.1(b) provides that a rescission hearing is civil in nature. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) As such, in order to grant a defendant's request for rescission, the trial court must find that the defendant has satisfied his burden of proof by a preponderance of the evidence. Whether a defendant has met his burden of proof is a question of fact to be determined by the trial judge. (*People v. Blythe* (1987), 153 Ill. App. 3d 292, 298, 505 N.E.2d 402, 405.) The findings of the trier of fact in this regard will not be overturned on appeal unless such findings are palpably against the manifest weight of the evidence. (*People v. Jacquith* (1984), 129 Ill. App. 3d 107, 117, 472 N.E.2d 107.) The scope of a section 2—118.1 hearing is limited to four issues, the fourth being relevant to the present case: "[w]hether the person *** did submit to and complete such test or tests which determined an alcohol concentration of 0.10 or more." Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b)(4).

Our examination of the trial court's order reveals that the trial court found that the defendant's testimony raised, by a preponderance of the evidence, the inference that the intoxilyzer reading was inaccurate because the machine's light reappeared after the defendant

stopped blowing into it the first time. The State argues on appeal that the trial court misperceived the significance and weight of the evidence and was, thus, incorrect when it found that the defendant raised an unrebutted inference of inaccuracy. The State does not dispute the credibility of the testimony offered; rather, the State argues that the defendant's proof was insufficient to establish a *prima facie* showing of the machine's inaccuracy so as to require the State to present evidence of accuracy in rebuttal. We agree. *Prima facie* evidence is that evidence sufficient to establish a fact and which if unrebutted will remain sufficient. *People v. Guthrie* (1980), 85 Ill. App. 3d 831, 835, 407 N.E.2d 593, 597.

All that supports the defendant's theory that the machine had malfunctioned is the testimony of the defendant that the light had gone out and then back on again, and then out, and possibly the testimony of Officer Prather to the effect that when the machine has received sufficient samples, the light goes out. As to this latter testimony, however, it does not exclude the possibility that the coming back on of the light is consistent with normal operations.

██ ■ We are cognizant of the legal principle that where several reasonable inferences are possible, the appellate court is obligated to accept those which support the trial court's order. (*Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 963, 466 N.E.2d 977.) Here, however, there is virtually no evidence sufficient to support an inference that the machine malfunctioned. Certainly the uninformed opinion of the defendant does not. The defendant has failed in his burden of establishing a *prima facie* case. (*People v. Blythe* (1987), 153 Ill. App. 3d 292, 298, 505 N.E.2d 402, 405.) Even if he had, his supporting evidence would have been rebutted by the testimony of Officer Prather, who testified that the testing procedure was normal. Also, the defendant was instructed to blow again by Officer St. Ores, who was the operator, and who thereupon was able to get a test result.

We believe the ruling of the trial court to be against the manifest weight of the evidence. *Laroia v. Reuben* (1985), 137 Ill. App. 3d 942, 946, 485 N.E.2d 496; *People v. Jacquith* (1984), 129 Ill. App. 3d 107, 117, 472 N.E.2d 107.

The judgment of the circuit court of Stephenson County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DUNN and REINHARD, JJ., concur.