March 17, 1999

NO. 5-97-0245

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,)  Appeal from the

                                    )  Circuit Court of

     Plaintiff-Appellee,            )  Christian County.

                                    )

v.                                  )  No. 96-DT-62

                                    )

ELDON E. SHELTON,                   )  Honorable

                                    )  Ronald D. Spears,

     Defendant-Appellant.           )  Judge, presiding.

_________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

Defendant appeals from the judgment of conviction entered upon a jury verdict of guilty for driving under the influence (DUI) of drugs (625 ILCS 5/11-501(a)(3) (West 1996)).  On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt and that numerous trial errors denied him a fair trial.  We reverse and remand.

FACTS

At defendant's trial, William Nelson, a police officer for six years, testified that on June 11, 1996, at approximately 7 p.m., he observed a car
 travelling "at a high rate of speed" through Taylorville, Illinois.  After the car passed two vehicles in the left-turn lane, Nelson activated his overhead lights and pursued the car.  Nelson observed the car come to a complete stop at a stop sign and then pull over into a parking lot.  Defendant exited the car.

After defendant exited his car, defendant told Nelson that his accelerator stuck, and then defendant told Nelson that he should go for a ride with defendant.  Nelson did not smell any odor of alcohol on defendant but described his behavior as "off balance" and "very agitated."  When Nelson asked defendant for his driver's license, defendant told Nelson that he did not have a license because it was revoked.  Nelson testified that defendant then stated, "I'm getting ready to run," but immediately told Nelson that he was kidding.  Defendant then gave Nelson his driver's license.

According to Nelson, defendant became more agitated when  another officer, Sheila Nation, arrived.  When Nelson requested that defendant perform field sobriety tests, defendant initially refused, but after Nelson told defendant that he would be placed under arrest for driving under the influence, defendant agreed to take the tests.    

Nation testified that she noticed that defendant talked constantly.  Nation described defendant as "very high strung [and] unable to stand still.  She stated, "[H]e was moving around constantly, he was agitated at one time, and then he would kind of calm down and *** be cooperative."  Both Nelson and Nation testified that defendant told them several times, angrily, that he was not drunk and that he had not had anything to drink for several years.  Nation testified that defendant stated, both at the scene and later at the police station, that he was "on Tylenol 3 with codeine".  

Nelson testified that defendant failed all of the field sobriety tests given.  On the heel-to-toe test, defendant failed to touch his heel to his toe on several steps, and he did not pivot or count his steps correctly.  Both officers testified, however, that defendant was able to walk a straight line as part of that test.  Nation testified that defendant "kept losing his balance" as he waited for Nelson to finish the instructions for that test.  Nelson next asked defendant to stand on one leg to a count of 30.  According to both officers, defendant lost his balance right away the first time he tried the one-legged stand, and he started too soon.  On his second attempt, defendant stood on one leg without stumbling to the count of 14.  The final test given to defendant was the finger-to-nose test.  According to both officers, defendant failed this test because he opened his eyes for part of the test and he touched the bridge of his nose and then slid his finger down to the tip on at least one attempt.

After defendant failed the field sobriety tests, Nelson arrested him for driving under the influence of drugs.  Nelson did not suspect that defendant had been drinking alcohol.  Defendant was not charged with speeding or any other offense.  Nelson testified that on the way to the police station, defendant asked the officer to give him a breath test, but Nelson told defendant that the officers could ask for blood or urine tests instead.  According to Nelson, defendant responded by threatening Nelson and his family.  Nelson testified that he did not want to give defendant the breath test, since the breath test measures only the amount of alcohol in a person's body.

At the police station, Nelson asked defendant to submit to blood and urine testing.  According to Nelson, defendant responded that he wanted to speak to an attorney.  Nelson allowed defendant to make "several" phone calls, but he did not know whether defendant spoke to an attorney.  Nelson testified that he overheard defendant tell the booking officer, John Seibenthal, that "Doctor Manson had pumped him full of codeine and morphine."  Seibenthal verified that defendant made that statement.

After defendant finished his phone calls, Nelson again asked defendant to submit to blood and urine testing.  According to Nelson, defendant responded that he wanted to speak to an attorney before he made his decision.  Nelson testified that he considered defendant's response a refusal to take the tests, since Nelson already gave defendant an opportunity to call an attorney.  Nelson admitted that defendant never actually refused to take any tests.  After defendant asked for an attorney the second time, defendant then told Nelson that he wanted to take the tests.  Nelson told defendant that it was too late, because he was already done processing him and "everything was already completed."  Nelson did not tell defendant that his initial request to speak to an attorney was the reason that Nelson denied defendant's request to take the blood and urine tests.   

There is no evidence in the record concerning the amount of time that expired between Nelson's first request for defendant to take blood and urine tests and defendant's subsequent consent to take those tests.  There is no evidence that Nelson informed defendant that his initial request to speak to an attorney would be considered a refusal to take the test.  There is no evidence that defendant was informed that his request to speak to an attorney would be used against him in court as a refusal to submit to chemical testing.  There is no evidence that Nelson informed defendant that his request to speak to an attorney could subject him to a six-month statutory summary suspension of his driver's license.  See 625 ILCS 5/11-501.1(c) (West 1996) (which provides that a person asked to submit to breath, blood, or urine testing "shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension" of his driver's license).  

There is no evidence in the record that defendant was informed that he could not submit to testing if he chose to speak to an attorney first.  There is no evidence that Nelson or any other officer attempted to take defendant to the hospital where the testing would be done or that defendant indicated that he would not go to the hospital for testing.  

Nelson testified that in his prior experience as a police officer, he observed people under the influence of drugs.  Nelson testified that he had "limited training in the academy" concerning narcotics, which consisted of a "small block" of his "DUI training," and that he previously arrested one other person for driving under the influence of drugs, but that charge was dismissed.  According to Nelson, a person under the influence of drugs will "be a little more confused" than those who are under the influence of alcohol.  Nelson testified that defendant appeared to be "very off balance, very moody and agitated, and very talkative" and that these characteristics are indicative of drug usage.  Based upon his observation, Nelson testified that he believed that defendant was under the influence of drugs and that defendant was not capable of driving a vehicle safely.

At the close of the State's evidence, defendant moved for a directed verdict, arguing that the State failed to prove that defendant was under the influence of drugs.  As part of the argument on the motion for directed verdict, the trial court asked the prosecutor if the effect of the drugs that defendant ostensibly admitted to taking was a matter "within the common knowledge of the jury."  The court noted, "[T]here's been no evidence presented to it[--]what the effects would be on someone under the influence of [those drugs]."  The State replied and the following colloquy ensued:

"MR. MARTIN [prosecuting attorney]:  Yes.  And the reason I believe that, Judge, is because I asked that question and most *** of the jurors said yes, they had taken codeine, and some of the jurors had also responded yes, they had taken Darvon. 

COURT:  So *** the jurors have to rely upon each other's statements as to what the effects are?  In the absence of any evidence presented.

MR. MARTIN:  Judge, if you get to that point then there's difficulty in the State proving any case because I can't show that a juror would have common knowledge of the fact of any effect of cocaine or whatever it is.  I can't put a jury on there that would know the effects of cocaine.  

***

COURT:  And I asked about three questions trying to get the State to see if they were going to have this officer explain, based on his training and experience, what those effects would be.  
There's nothing in this record of any kind showing what the effects would be of someone under the influence of these particular drugs[,] [o]r any drugs.  No, no evidence of that at all in the record
.  I'm going to deny the motion at this point[,] but this is really a close case.  
This is an extremely close case
.  The motion is denied at this time."  (Emphasis added.)

Defendant's mother, Glenda Shelton, testified that defendant had surgery to remove his gallbladder on May 8, 1996, just over a month before his DUI arrest, and that defendant was given morphine while he was in the hospital and was prescribed a painkiller and an antibiotic after his release from the hospital.  Shelton testified that when defendant called her from the police station, he told her that he had asked the officers to give him breath, blood, and urine tests but that they refused to give him any tests.  Shelton testified that when she arrived at the police station, defendant was angry because the officers would not give him any tests.  According to Shelton, as she and defendant were leaving, Officer Nelson told defendant that if he wanted to be tested, he should "have it done." 

Larry Cook testified that he observed defendant being arrested.  He testified, "[I overheard defendant say] he wasn't drinkin' and he requested any of the ones they administered, breath, blood, urine, it didn't matter to him."  In rebuttal, Officer Nelson denied that defendant ever asked to take any tests before he was transported to the police station.  

In closing argument, the State argued:

"He failed to take the breath test.  He asked for an attorney[;] they gave him an opportunity to contact an attorney.  Here's the phone[;] make your phone call.  Called his mother apparently ***.  He didn't call an attorney.  At least that isn't consistent with calling an attorney.  Get done with that, come back to him again, [and he says `]I want to talk to an attorney['].  The officer wrote it down as a refusal.  It is a legal refusal if he keeps on asking for an attorney.  What's the officer supposed to do[?]  ***  [I]t's not like he can talk to an attorney, come back.  He was given the opportunity to call." 

The prosecutor then argued for the jury to consider defendant's statements:

"Codeine and Darvon, codeine and morphine, are those substances that can affect the equilibrium of the defendant.  Those substances can affect his ability to drive a vehicle safely.  The defendant said he had taken drugs prior to the arrest.  ***  If any of you have taken codeine or Darvon, are his actions consistent with those drugs[?]"

The defense counsel argued in closing that defendant not only asked for breath, blood, and urine testing before his arrest but he asked for blood or urine testing as he was leaving the police station.  Defense counsel told the jury that defendant's request for an attorney prior to taking the tests amounted to a "legal refusal."  Defense counsel argued, however, that defendant probably did not know that he was legally refusing to take the tests.  Additionally, he argued that the police should have given him the tests as soon as he agreed to take them, even if it was after he initially refused.

The jury returned a verdict of guilty of the offense of driving under the influence of drugs.  

DISCUSSION

I. REASONABLE DOUBT

Defendant first challenges the sufficiency of the evidence, claiming that the State's failure to connect defendant's drug usage to his driving ability leaves a reasonable doubt as to his guilt.  The elements of the offense of driving under the influence of drugs are that (1) defendant was either driving or in actual physical control of a vehicle (2) while under the influence of any drug or combination of drugs (3) to such a degree that it rendered defendant incapable of safely driving.  625 ILCS 5/11-501(a)(3) (West 1996).  The evidence is clear that defendant was driving a vehicle, so the issues in this case center around the second two elements of the offense.  

The standard for a review of a challenge to the sufficiency of the evidence is first to consider all of the evidence in the light most favorable to the prosecution and then to decide if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985); 
People v. Moore
, 279 Ill. App. 3d 152, 154 (1996).  Here, the jury could have found defendant's statements that he was "on Tylenol 3 with codeine" to be sufficient proof that he was under the influence of drugs at the time he was pulled over by Officer Nelson.  Defendant argues that his statements merely indicate that he was concerned about the lingering effect of the drugs he took while in the hospital a month before his arrest.  However, if the jury believed Officer Nation's testimony, it could have believed that defendant was "on" or under the influence of drugs at the time of his arrest.  See 
People v. Bitterman
, 142 Ill. App. 3d 1062 (1986).  Even if defendant had a legal prescription for "Tylenol 3 with codeine," this fact would provide no defense if his use of the drug rendered him incapable of driving safely.  See 625 ILCS 5/11-501(b) (West 1996).

Officer Nelson's statements about defendant's driving prior to his stop and both officers' descriptions of defendant's lack of balance and his inability to pass the field sobriety tests provide sufficient evidence of his inability to drive safely.  Thus, when all of the evidence is viewed in the light most favorable to the prosecution, a rational jury could have found defendant guilty of the essential elements of the crime beyond a reasonable doubt.  

II. WHETHER TRIAL ERRORS DEPRIVED DEFENDANT OF A FAIR TRIAL

Defendant contends that three trial errors combined to deprive him of a fair trial:  (1) improper comments about defendant's request to speak to an attorney, (2) the lack of foundation for Nelson's opinion testimony, and (3) the State's improper closing argument.

Defendant argues that the prosecuting attorney commented three times in his opening statement that defendant asked to speak with an attorney and stated that such a request amounted to "a legal refusal factually."  The State also elicited testimony from Officer Nelson about defendant's request to speak to an attorney and then derisively commented about it again during his closing argument.  During closing arguments, both the prosecutor and the defense attorney told the jury that defendant's request for an attorney amounted to a legal refusal to submit to chemical testing.  

The State responds that defendant waived this argument for appeal, since defendant's attorney failed to object to the statements during trial and failed to raise the issue in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176 (1988).  Defendant urges us to consider the issue under the doctrine of plain error: 

"`A significant purpose of the plain error exception to the waiver doctrine is to correct any serious injustices which have been done to the defendant.  It therefore becomes relevant to examine the strength or weakness of the evidence against him; if the evidence is close, there is a possibility that an innocent person may have been convicted due to some error which is obvious from the record[] but not properly preserved.  Thus, this court has held that where the evidence is closely balanced, a court of review may consider errors that have not been properly preserved for review.'"  
Enoch
, 122 Ill. 2d at 199, quoting 
People v. Carlson
, 79 Ill. 2d 564, 576 (1980).  

Under the above standard, we are compelled to review this issue, since the evidence against defendant on the second two elements of the offense was not overwhelming but, on the contrary, was described by the trial court as "extremely" closely balanced.

A defendant charged with DUI has a right to an attorney during the "`critical stages' of the criminal process," just as any defendant charged with any crime has the right to speak to an attorney.  
People v. Thomas
, 199 Ill. App. 3d 79, 94 (1990), quoting 
Brewer v. Williams
, 430 U.S. 387, 398, 51 L. Ed. 2d 424, 436, 97 S. Ct. 1232, 1239 (1977).  The rules regarding speaking to an attorney are slightly different in this area of the law, however.  Although a DUI defendant retains the right to speak to an attorney, that right may not unduly delay the law enforcement official's right to subject him to chemical testing to determine whether he has alcohol or drugs in his system.  See 
People v. Graziano
, 151 Ill. App. 3d 475, 479 (1986) (and cases cited therein which hold that a defendant does not have the right to speak to an attorney before implied-consent testing occurs).  

Nevertheless, defendant is correct that the State should not have emphasized his request for an attorney, since this evidence  may lead the jury to assume that defendant would not have asked for an attorney unless he were guilty.  Such a negative inference upon a person's constitutional right to an attorney is unacceptable.  
People v. Meredith
, 84 Ill. App. 3d 1065, 1071-72 (1980).  

In the case at bar, the error of undue emphasis upon defendant's constitutional request for an attorney was combined with the error of both the State and the defense casting the request in terms of a "legal refusal" to submit to chemical testing, even though defendant never actually refused to submit to chemical testing.  In the case of 
People v. Kern
, 182 Ill. App. 3d 414 (1989), the court considered a factual situation very similar to that presented herein.  In 
Kern
, the court held that where the arresting officers allowed a defendant charged with DUI to consult with an attorney prior to submitting to chemical testing, the request to speak to an attorney could not be held to be a refusal without some additional evidence that the defendant said or did something, beyond merely asking to speak to an attorney, to indicate his refusal to submit to the testing.  
Kern
, 182 Ill. App. 3d at 416.

The court in 
Kern
 found as follows: 

"[W]hile a defendant's conditioning his taking of a blood-alcohol test on his ability to consult legal counsel may constitute a refusal (
Village of Cary v. Jakubek
 (1984) 121 Ill. App. 3d 341, 344 ***), there is nothing in the record to indicate that Kern stated any condition to his taking the test.  In fact, the record indicates that after Kern spoke with an Illinois attorney, he agreed to take the test.

Thus, it is evident from the record that Kern did not refuse to submit to or complete the requested blood-alcohol test."  
Kern
, 182 Ill. App. 3d at 416.

We find 
Kern
 dispositive of the issue before this court.  In the case at bar, defendant did nothing to indicate that he would not take the tests.  He merely asked to telephone an attorney, and Officer Nelson allowed him to do so.  Defendant then agreed to take the tests and asked that they be administered.  Just as in 
Kern
, there can be no refusal merely on the basis of a request to speak to an attorney without some behavioral or verbal indication that the defendant actually refuses to take the test.  See also 
Goss v. People
, 272 Ill. App. 3d 498 (1995) (wherein the court relied upon 
Kern
 to hold that where the police allowed defendant to consult with an attorney prior to testing, the defendant's insistence to continue talking to his attorney, without more, was not a refusal to submit to testing).  

If Officer Nelson had informed defendant that he had no right to speak to an attorney before taking the test, and if defendant had then done anything to indicate his refusal, then Officer Nelson could have properly considered defendant to have refused to submit to testing.  See 
People v. Krosse
, 262 Ill. App. 3d 509 (1994) (wherein a motorist was found to have refused to take tests when he conditioned his taking of test upon identity of transporting officer and then refused to take test when condition was not met); 
People v. Buerkett
, 201 Ill. App. 3d 140 (1990) (wherein the defendant's insistence on right to consult attorney before testing, even after being warned of consequences of that insistence, amounted to refusal to submit to testing); and 
People v. Kiss
, 122 Ill. App. 3d 1056 (1984) (wherein this court held that refusal to take one test amounted to refusal to take all tests).  However, the record in this case is clear.  Other than asking to call an attorney, defendant did nothing to indicate refusal.     

Additionally, we find that the facts in this case weigh more strongly against a finding of refusal than in 
Kern
, because 
Kern
 involved a review of a statutory summary suspension of the defendant's driver's license, wherein it is the defendant's burden to prove, by a preponderance of the evidence, that the State has failed to present a 
prima facie
 case for rescission.  
People v. Huisinga
, 242 Ill. App. 3d 418, 421 (1993).  In the case at bar, defendant was charged with a class A misdemeanor for which the State, not the defendant, was required to prove all of the essential elements of the offense beyond a reasonable doubt, and the purported evidence of defendant's refusal was used in his jury trial on the issue of guilt.  625 ILCS 5/11-501(c) (West 1996); 
Moore
, 279 Ill. App. 3d at 154.  Here, the improper references to defendant's request to speak to an attorney were compounded by the State's and the defense counsel's inaccurate characterizations of defendant's requests for an attorney as a "legal refusal," as if it carried some legal presumption of guilt, when the law does not provide any such rule.  To be fair to defendant's attorney, he  argued that the jury should consider defendant's later request to be tested as evidence of his innocence.  Nevertheless, we feel that the use of the term "legal refusal" by the State at the outset of the trial, the use of that term by both the State and the defense during their closing arguments, and the State's denigration during closing argument of defendant's request for an attorney were serious enough errors to tip the balance of this "very close" trial unfairly against defendant.

Defendant next argues that the State did not lay a proper foundation for Officer Nelson's opinion testimony that defendant was under the influence of drugs and that the drug usage rendered him incapable of driving safely.  Laypersons may testify about the effects of alcohol, because such observations are familiar to most adults of normal experience.  
People v. Vanzandt
, 287 Ill. App. 3d 836, 845 (1997).  However, the effects of drugs are not commonly known, and training and experience are necessary to understand their effects on people.  
People v. Jacquith
, 129 Ill. App. 3d 107 (1984).  

In 
Jacquith
, the court considered cases from outside Illinois, since there was a shortage of Illinois law on this issue.  
Jacquith
, 129 Ill. App. 3d at 114.  According to the court in 
Jacquith
, if a law enforcement officer has some training in how to detect drug users and, more importantly, experience in dealing with drug users, then the officer may be qualified to testify about his or her belief that the defendant was under the influence of drugs.  
Jacquith
, 129 Ill. App. 3d at 115.  The 
Jacquith 
court did not draw a bright-line test but left the issue to depend upon the facts of each particular case.  The court in 
Jacquith
 found that several years of experience in dealing with drug users might provide the necessary foundation for an officer's opinion that the defendant was under the influence of drugs, but the court held that a lack of previous experience in dealing with narcotics users and only limited training in "the areas of alcohol and drugs" while at the police academy was "insufficient to support a finding that the defendant operated a motor vehicle while under the influence of drugs."  
Jacquith
, 129 Ill. App. 3d at 115. 

In the case at bar, Officer Nelson testified that he had "limited training" in how to detect drug users, which consisted of a "small block" of his DUI training at the police academy.  He described his experience with drug users during his six years as a police officer:  "We [had prior dealings with people on drugs]."  He testified, "We [took] those people [evidently those who had overdosed on drugs,] to emergency rooms."  Nelson testified that a person who is under the influence of drugs will be "a little more confused" than someone under the influence of alcohol.  Nelson observed defendant to be "very off balance, very moody and agitated, and very talkative," and Nelson testified that he considered such behavior to be "consistent with" what he observed in other narcotics users.  

Nelson's testimony does not indicate extensive personal experience with drug users.  Instead, Nelson used the word "we," which could mean others in his department, when he described the prior, frequent dealings with drug users.  Experience in transporting people who have overdosed on drugs and "limited training" that narcotics users are a "little more confused" than those under the influence of alcohol do not provide a sufficient foundation to qualify Nelson to render an opinion that defendant's off-balance, moody, agitated, and talkative behavior indicated that he was under the influence of drugs.

Our finding on this issue is consistent with the trial court's finding that there was "no evidence *** in the record" of the effects of any drugs.  The trial court erred in allowing Nelson to state his opinion concerning whether defendant was under the influence of drugs.  This error, when combined with the other errors, deprived defendant of a fair trial, for the jury was not informed that Nelson had no basis for his opinion, and since he was in a position of authority, the jury could reasonably be expected to give Nelson's opinion undue weight.  "A trial error is of such magnitude as to require the reversal of a defendant's conviction if there is a reasonable probability the error may have contributed to that conviction."  
People v. Green
, 294 Ill. App. 3d 139, 144 (1997).  When the error of allowing Nelson to improperly state his opinion is considered in light of the paucity of other evidence against defendant, it is clear that it contributed to his conviction and is a proper basis for reversal.  

Defendant next contends that the State made improper and prejudicial statements in its closing argument.  Specifically, defendant cites the prosecutor's statements that codeine and Darvon, or codeine and morphine, "can affect [one's] ability to drive a vehicle safely."  Clearly, no evidence as to the effect of any drug was presented at this trial.  Defendant also argues that the State unfairly asked the jurors whether any of them had taken codeine or Darvon and, if they had, asked them to consider whether defendant's actions were consistent with being under the influence of those drugs.  This request for the jurors to use their own, everyday experience to determine an issue that is clearly the province of expert testimony is reversible error, especially where the competent evidence of defendant's guilt is absent from the record.  

CONCLUSION

For all of the reasons stated, defendant's conviction is reversed, and this case is remanded to the circuit court of Christian County for a new trial.

Reversed and remanded.

GOLDENHERSH and MAAG, JJ., concur.