# Illinois Official Reports

## Appellate Court

---

### *People v. Gocmen*, 2017 IL App (3d) 160025

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. AHMET GOCMEN, Defendant-Appellee. |
| | |
| District & No. | Third District<br>Docket No. 3-16-0025 |
| | |
| Filed<br>Modified upon denial<br>of rehearing | March 29, 2017<br><br>May 15, 2017 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 15-DT-1284, 15-TR-72055, 15-TR-72056; the Hon. Carmen Goodman, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | James Glasgow, State's Attorney, of Joliet (Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>No brief filed for appellee. |
| | |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge concurred in the judgment and opinion.<br>Justice Schmidt dissented, with opinion. |

**OPINION**

¶ 1    The trial court granted the petition to rescind statutory summary suspension filed by defendant, Ahmet Gocmen. The State appealed, arguing that the trial court erred in granting the petition. We affirm.

¶ 2                                                                FACTS

¶ 3    Defendant was charged with driving under the influence of drugs or combination of drugs (625 ILCS 5/11-501(a)(4) (West 2014)) and improper lane usage (625 ILCS 5/11-709 (West 2014)). His driver's license was summarily suspended. Defendant filed a petition to rescind statutory summary suspension, which alleged that the officer did not have reasonable grounds to believe defendant had been in control of the vehicle while under the influence of alcohol or drugs.

¶ 4    A hearing was held on defendant's petition. The sole witness was Officer Adam Beaty, who testified that he had been a police officer for the Village of Shorewood for two years. He had never received any driving under the influence (DUI) drug training, though he had received DUI alcohol training. On September 14, 2015, at 11:10 a.m., he responded to a call for an unconscious person in a vehicle who was possibly having a seizure. When he arrived on the scene, Beaty noticed a Ford Explorer with its passenger side tires on the grass and part of the vehicle still on the road. Paramedics were already present, attending to defendant.

¶ 5    While on the scene, Beaty observed a Red Bull can on the passenger's side of defendant's vehicle. The can "had been either cut or tore in half, with burn marks on the *** interior [of] the can." On the inside, bottom of the can, Beaty noticed "a brown, tanish residue." Beaty performed a "NARK Cocaine ID Swipe" to test for drugs in the can. He was trained to perform the NARK test, but had never performed a NARK test on any evidence prior to this time. He took the test out of the package and touched it to the bottom of the can. The test then turned blue. He had been taught during his training that the blue color indicated the presence of opiates. Beaty also found a used one-millimeter syringe in the vehicle. A brown, granular substance was also found in a small baggy in defendant's wallet, for which test results were not available at the time of the hearing. Beaty was asked whether he made "any observations of [defendant] before he left the scene." Beaty stated, "Other than what paramedics told me, no." Defendant never performed any field sobriety tests.

¶ 6    Beaty talked to the paramedics about defendant. He asked if there was any indication of intoxication or alcohol. The paramedics indicated that there was not. The paramedics did tell Beaty that there was a fresh track mark on defendant's arm where a needle would have been used. The paramedics also told Beaty that defendant was sweating, had pinpoint pupils, and had a heart rate of 144 beats per minute. Defendant was also in and out of consciousness.

¶ 7    Beaty met defendant at the hospital. He did not make any observations of defendant at the hospital other than that he was tired and lethargic. Defendant indicated to Beaty that he was diabetic. Beaty arrested defendant for DUI of drugs. He based the arrest on the NARK swipe, the syringe, and the baggy with the granular substance in defendant's wallet.

¶ 8    At the end of Beaty's testimony, the defense rested. The State then moved for a directed finding. The court denied the motion and stated, "The burden now shifts to the State." The State did not provide any evidence.

¶ 9   In granting defendant's petition to rescind, the court stated:

"One of the things, unlike alcohol—and the case law's [*sic*] very clear on this—to show intoxicating or drugs, it can't be based purely on lay testimony.

Here, the witness must be qualified still as an expert and, and must establish the effects of the drugs, which I, I just did not hear. I heard about how he could test for the presence of, of drugs. And here we have that it turned blue in color.

In addition, we still have the other factors that we must look at. And we must look at what the officer observed.

Officer said that he talked to the paramedics, but, however, by the time he arrived on scene, the paramedics were still there, the petitioner was still in the vehicle and seemed to be nonresponsive.

But the one thing, there was some conversation between the [defendant] and the officer because the officer was able to gauge that the [defendant] indicated that he was diabetic.

Syringes and such are so connected to a diabetic, depending on the nature of your diabetes. Track marks probably would be found if you have to take insulin shots every single day.

So, the officer did not base his arrest on what he observed outside of he found a syringe and the can. \*\*\*

\*\*\*

The dispatch even was a possible seizure. Even the paramedics, according to the officer's testimony, indicated they didn't even smell any alcohol.

Even if we found that the officer had some experience, where he testified he had no experience and training other than how to test for possible presence of a drug, did this particular individual take that particular drug, was that in their system, and not related to him being a diabetic, and did that have, having an accident? Clearly there was some issues with driving.

But an officer must also show the [effects] of, of the drugs on this individual that he found, and none of that was done."

¶ 10                                  ANALYSIS

¶ 11   On appeal, the State argues that the trial court erred in granting defendant's petition to rescind his statutory summary suspension. Specifically, the State calls our attention to the following facts: (1) the physical symptoms defendant was presenting, (2) the substance in defendant's wallet, (3) the syringe, (4) the track mark, and (5) the Red Bull can which tested positive for opiates. While we acknowledge these facts, they are insufficient to establish probable cause to arrest for DUI of drugs as the record confirms that Beaty had no training or experience that would enable him to distinguish between a diabetic reaction and a drug reaction.

¶ 12   At the outset, we note that defendant has not filed an appellee's brief. In spite of the lack of an appellee's brief, we will decide the present case on its merits because the record is simple and the issues are such that this court can easily decide them without an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 13    The issue at this statutory summary suspension hearing was whether the officer had reasonable grounds to believe that the person was driving while under the influence of drugs. We use the probable cause analysis derived from the fourth amendment to answer this question. *People v. Wear*, 229 Ill. 2d 545, 560 (2008). "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *Id.* at 563. Such a determination must be based on the totality of the circumstances. *Id.* at 564. When reviewing a trial court's decision on a petition to rescind, we apply a two-tier standard of review: the trial court's factual findings are reviewed under a manifest weight of the evidence standard, while the ultimate ruling whether rescission is warranted is reviewed *de novo*. *Id.* at 561-62.

¶ 14    Initially, we note that the State points to defendant's physical symptoms: that defendant was sweating, had pinpoint pupils, and had a heart rate of 144 beats per minute. However, Beaty admitted that he never observed defendant and only knew these symptoms by speaking to the paramedics. As Beaty never observed these symptoms and did not have any training or experience in DUI of drugs, his opinion as to the cause of said symptoms is tenuous at best. Moreover, Beaty further based his arrest on the residue found at the bottom of the Red Bull can. Though Beaty conducted a "NARK Cocaine ID Swipe" of the residue, which he said tested positive for opiates, we find it curious that a "Cocaine ID" test would be used to test for opiates when cocaine is not an opiate. See *People v. Vernor*, 66 Ill. App. 3d 152, 154-55 (1978) (finding that opiates are narcotic drugs while cocaine is not). Therefore, it is unclear whether Beaty even administered the correct type of test, and if so, whether he administered it correctly.

¶ 15    Even accepting defendant's physical symptoms and the fact that the Red Bull can tested positive for opiates, we agree with the trial court that Beaty lacked probable cause to believe that defendant was *under the influence* of such drugs. We emphasize that defendant told Beaty that he was a diabetic. We also emphasize that Beaty admitted that he had no training in DUI of drugs. Viewing these two facts in conjunction with one another, we agree with the trial court's conclusion that Beaty would not have known the difference between a diabetic reaction and a reaction to drugs. The dissent states that "the trial court was in no position to judge defendant's credibility." *Infra* ¶ 25. However, the court *did not* make any credibility finding. Instead, the court reviewed the evidence in totality and determined (1) that defendant may have been a diabetic and (2) since the officer did not have any drug training or experience, he had no basis to conclude that defendant's state was based on drugs and not diabetes.

¶ 16    Though a layperson can testify regarding intoxication from alcohol, "the effects of drugs are not commonly known, and training and experience are necessary to understand their effects on people." *People v. Shelton*, 303 Ill. App. 3d 915, 925 (1999). The dissent takes issue with our use of *Shelton*, as it "dealt with a police officer's ability to give his opinion at a criminal jury trial that defendant was under the influence of drugs" and did not concern the issue of whether or not the officer had probable cause at a statutory summary suspension hearing. *Infra* ¶ 24. Though the dissent is correct, we believe the principle is equally applicable in the probable cause context. In determining the reliability of an officer's probable cause determination, our supreme court has held that the "officer's experience and training in the detection of controlled substances" must be taken into account. *People v. Stout*, 106 Ill. 2d 77, 87 (1985). Though the supreme court has declined "to define the exact number of training hours or employment years necessary to render an officer's belief reliable," (*id.*) we agree with the dissent that "[o]ne need not be a 20-year police veteran or drug expert." *Infra* ¶ 28.

However, the record in the instant case is simply devoid of *any* evidence of training or experience. While we acknowledge the track mark on defendant's arm and the syringe found in his car, the trial court correctly held that both "are so connected to a diabetic." Finally, the substance found in defendant's wallet carries no evidentiary weight as test results were not available at the time of the hearing. Accordingly, we uphold the rescission of defendant's statutory summary suspension.

¶ 17    In coming to this conclusion, we reject the State's reliance on *People v. Arrendondo*, 2012 IL App (3d) 110223, for the proposition that "an officer need not be an expert in order to have reasonable grounds to believe that a defendant was driving a vehicle while under the influence of a drug." In *Arrendondo*, the defendant was arrested for DUI of cannabis. *Id.* ¶ 18. While we agree that an officer need not necessarily have "advanced training" or be certified as an expert, some training and experience in DUI of drugs is necessary. See *Shelton*, 303 Ill. App. 3d at 925-26. Unlike the instant case, where Beaty stated he had no training or experience, the officer's testimony in *Arrendondo* met this standard. Specifically, the officer testified that he had training in the identification of cannabis and had "learned that glossy, bloodshot eyes were a possible indicator that a person had been smoking cannabis." *Arrendondo*, 2012 IL App (3d) 110223 ¶ 4. He further had encountered cannabis many times in his career. *Id.* Also, unlike the instant case, the defendant in *Arrendondo* admitted to having smoked cannabis on the evening he was arrested. *Id.* ¶ 11. Simply put, the State misreads *Arrendondo*.

¶ 18    Further, we reject the State's argument that we should depart from cases like *Shelton*, which require training and experience in order to testify regarding the effects of drugs. Specifically, the State argues "the unfortunate explosion in illicit drug use throughout all sectors of our society has made the effects of drugs on people common knowledge." The State exaggerates the pervasiveness of drug use. It defies logic and borders on insulting to say that the average person in Illinois is so familiar with illicit drug use that he or she is able to recognize its effects.

¶ 19    In a petition for rehearing, the State argues, "The opinion in this case opens a Pandora's Box whereby all a defendant has to do to avoid an arrest for DUI drugs is to claim that he or she is diabetic." This is not the case. Here, defendant presented the testimony of Beaty, who stated that defendant told him he was diabetic and that he had no training or experience in DUI drugs. The court found that defendant had met his burden of establishing a *prima facie* case for rescission, as evidenced by its denial of the State's motion for directed finding. See *People v. Wear*, 229 Ill. 2d 545, 559-60 (2008) (a hearing on a petition to rescind a statutory summary suspension is a civil proceeding in which the driver bears the burden of proof). The court then stated that the burden shifted to the State. The State did not provide any evidence to justify the suspension. See *id.* at 560 (once the driver establishes a *prima facie* case for rescission, the burden shifts to the State to present evidence justifying the suspension). The court found that the State did not meet its burden of proof. Our opinion applies only to the factual situation, here, where Beaty did not have any training or experience in DUI drugs and defendant provided an alternative explanation of diabetes via the testimony of Beaty. Without any training or experience, as stated above (*supra* ¶¶ 15-16), Beaty would not have been able to form a reliable opinion on the cause of defendant's condition. This was enough to establish a *prima facie* case for rescission, which the State failed to rebut. Had Beaty had *any* experience or training or had the State provided some evidence to rebut the rescission, the outcome might

have been different.

¶ 20                                    CONCLUSION
¶ 21          The judgment of the circuit court of Will County is affirmed.

¶ 22          Affirmed.

¶ 23          JUSTICE SCHMIDT, dissenting.

¶ 24          I respectfully dissent. The arresting officer only had to be reasonable, not absolutely correct. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (holding that the "ultimate touchstone of the Fourth Amendment is 'reasonableness' "); *Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925))). Probable cause "means less than evidence which would justify condemnation ***. It imports a seizure made under circumstances which warrant suspicion." (Internal quotation marks omitted.) *Brinegar*, 338 U.S. at 175 n.14. The notion of probable cause recognizes that the officer may be wrong. *Heien v. North Carolina*, 574 U.S. ___, ___, 135 S. Ct. 530, 536 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' " (quoting *Brinegar*, 338 U.S. at 176)); *Brinegar*, 338 U.S. at 175 ("In dealing with probable cause, *** as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."). The majority's reliance upon *Shelton* is misplaced. That case dealt with a police officer's ability to give his opinion at a criminal jury trial that defendant was under the influence of drugs. *Shelton*, 303 Ill. App. 3d at 926. The issue was whether defendant was under the influence of drugs, not whether the officer had probable cause to arrest. *Id.* at 926-27.

¶ 25          The majority recognizes that a hearing on a petition to rescind the statutory summary suspension is a civil proceeding in which the driver bears the burden of proof. *Supra* ¶ 19. I fail to understand how the driver established a *prima facie* case for rescission in this case. The majority "emphasize[s] that defendant told Beaty that he was a diabetic." *Supra* ¶ 15. The defendant did not testify at the suspension hearing. Therefore, the trial court was in no position to judge defendant's credibility. If the trial court believed anything, it could only believe that the officer truthfully testified that defendant told him he was diabetic. The trial court's comments indicate that it believed defendant was diabetic. On what evidence?

¶ 26          Defendant went from the scene to the hospital, where he was ultimately arrested. It would seem to me that if he wanted to make a *prima facie* case supporting rescission of his suspension, he would have brought forth some evidence that he was, in fact, diabetic and that perhaps he was suffering from some diabetic-related illness at the time. It appears that both the trial court and the majority accept the notion that defendant's statement to the officer at the scene that he was diabetic established a *prima facie* case for rescission and proved that the fresh needle mark in defendant's arm was most likely from an insulin injection.

¶ 27     Upon arrival at the scene, the officer observed defendant sitting in the driver's seat of the vehicle with the passenger tires on the grass of the eastbound lanes of Route 52. A portion of the vehicle was in the roadway. Defendant was in the driver's seat, the engine was running, the vehicle was in park, defendant's foot was on the brake, and his left arm was on the steering wheel. The officer noted defendant was in and out of consciousness and did not cooperate with verbal commands by Troy paramedics to exit the vehicle. Defendant stated that he was okay to drive. He told the officer that he was northbound on Route 59 (he was, in fact, eastbound on Route 52).

¶ 28     In defendant's car, the officer observed a Red Bull can that had been cut in half and had burn marks on the underside of the can. Most likely, the burn marks on the bottom of the can were not there because defendant preferred his Red Bull hot. Beaty also found a baggie of what field tested as positive for drugs, as well as an uncapped syringe lying on the passenger seat. Paramedics advised the officer that defendant had not only a hole in his arm from a recent injection, but also track marks on his arm. One need not be a 20-year police veteran or drug expert to connect these dots. Track marks are a common sign of a drug abuser who injects his or her drug of choice repeatedly, ultimately causing collapse of veins and distinct marks in the affected area. Defendant is not the first drug user to tell police he is a diabetic upon being found with a hypodermic syringe.

¶ 29     The only "evidence" of defendant being a diabetic was defendant's self-serving statement to the officer at the scene. Also, diabetes and nonprescription drug abuse are not mutually exclusive. In light of the totality of the circumstances, the officer's conduct was totally reasonable. Again, defendant failed to make a *prima facie* case for rescission. I would reverse the trial court.