# Illinois Official Reports

## Supreme Court

---

### *People v. Gocmen*, 2018 IL 122388

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. AHMET GOCMEN, Appellee. |
| Docket No. | 122388 |
| Filed | September 20, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (David L. Franklin, Solicitor General, Michael M. Glick and Leah M. Bendik, Assistant Attorneys General, of Chicago, and Patrick Delfino, Lawrence M. Bauer, and Mark A. Austill, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.<br><br>Elizabeth Butler, of Northbrook, for appellee. |

Justices                    JUSTICE GARMAN delivered the judgment of the court, with
                            opinion.
                            Chief Justice Karmeier and Justices Thomas, Kilbride, Burke, Theis,
                            and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1     Upon defendant's arrest for driving under the influence of drugs (625 ILCS 5/11-501(a)(4)
(West 2014) (DUI/drugs)), the arresting officer requested that he submit to chemical testing
and warned him that his refusal would result in statutory summary suspension of his driver's
license. *Id.* § 11-501.1(c). After he refused to submit to chemical testing, his driver's license
was summarily suspended pursuant to section 11-501.1(e) of the Illinois Vehicle Code. *Id.*
§ 11-501.1(e). The circuit court of Will County granted his petition to rescind (*id.*
§ 2-118.1(b)), and the appellate court affirmed (2017 IL App (3d) 160025). This court granted
the State's petition for leave to appeal pursuant to Illinois Supreme Court Rules 315 (eff. Mar.
15, 2016) and 612(b)(2) (eff. July 1, 2016) and, for the reasons that follow, reverses the
judgment of the circuit court and the appellate court.

¶ 2                                  BACKGROUND

¶ 3     Defendant filed a motion to rescind, and at the hearing that followed, he argued that the
officer lacked reasonable grounds to make the arrest. The only witness called by the defendant
was the arresting officer, Adam Beaty, who testified that he had been a police officer for two
years and that he had received DUI/alcohol detection training, but no specific DUI/drug
detection training.

¶ 4     According to his testimony on direct examination, at 11:10 a.m. on September 14, 2015, he
responded to a motorist's call reporting an unconscious person in a vehicle, possibly having a
seizure. When he arrived, paramedics were already on the scene. Defendant's Ford Explorer
was in the eastbound lane of Route 52, with the passenger side tires on the grass and the
driver's side tires on the road. The vehicle's transmission was in park, and the motor was
running. The officer observed defendant behind the wheel, with his foot on the brake and his
left hand on the steering wheel.

¶ 5     Initially, defendant did not respond to the paramedics' commands to exit the vehicle. He
insisted that he was able to drive and said, incorrectly, that he was northbound on Route 59.
Eventually, the paramedics convinced him to leave the vehicle; they placed him in the
ambulance and transported him to the hospital.

¶ 6     Asked about his other observations at the scene, the officer testified that he saw a Red Bull
can "on the passenger's side in plain view." The can had been cut or torn in half and had burn
marks on its interior. On the outside bottom surface of the can,[1] he saw a brown residue. He
performed a "NARK swipe" test of the residue, which, he said, showed the presence of

---

[1]The appellate court opinion incorrectly states that the residue was on the inside of the can. 2017 IL
App (3d) 160025, ¶ 5.

"opiates." He testified that although he had been trained to conduct this test, he had not previously performed it in the field.

¶ 7    He also saw an uncapped one-milliliter syringe on the passenger seat. He described the syringe as having been "used." He also found a small plastic bag containing a brown granular substance in defendant's wallet in the center console. Results of testing of this substance were not available at the time of the hearing.

¶ 8    Asked if he made any other observations of the defendant before he left the scene, the officer testified that, "[o]ther than what paramedics told me, no." He did not conduct any field sobriety tests. At the hospital, the officer observed that defendant was "tired and lethargic."

¶ 9    Asked about the basis for his decision to arrest defendant, the officer testified that he based his decision on the results of the "NARK swipe, which immediately turned from pink to blue, indicating the positive presence of opiates," the syringe "in his immediate area of control," and the small plastic bag containing a granular substance that he found in the defendant's wallet in the center console of the vehicle. He also testified that prior to the arrest defendant told him that he was diabetic.

¶ 10    On cross-examination, the officer testified that he spoke to the paramedics at the scene to ask if they had seen any signs of intoxication. They reported that defendant did not smell of alcohol, but they did observe a "fresh track mark" on his arm where a needle had been used. Paramedics also reported that defendant was sweating, had pinpoint pupils, had a rapid heart rate of 144 beats per minute, and was drifting in and out of consciousness.

¶ 11    With regard to his training, the officer explained that he was taught how to perform the NARK swipe during his field training after he was hired as a police officer. Prior to this event, he had not previously performed the test in the field. At the scene, he removed latex gloves from a sealed package and put them on. Then he opened the aluminum foil package containing the swipe. When he touched it to the bottom of the can, "it immediately turned a blue color," indicating the "positive presence of opiates." He further testified that he used this information as a basis for arresting defendant.

¶ 12    The defense rested. The trial court denied the State's motion for a directed finding and ruled that the burden had shifted to the State. The State did not present any evidence but argued that the officer's testimony demonstrated that he made a reasonable conclusion based on what he had observed.

¶ 13    The court granted defendant's petition to rescind, finding that the officer did not have reasonable grounds to believe defendant had been in control of the vehicle while under the influence of alcohol or drugs. After stating that it was "putting the evidence in light of the petitioner," the court stated that, "unlike alcohol," a showing of drug intoxication "can't be based purely on lay testimony"; the witness must be qualified as an expert and must establish the effects of the drugs. Further, the court stated that "[s]yringes and such are also connected to a diabetic, depending on the nature of your diabetes. Track marks probably would be found if you have to take insulin shots every single day." Although defendant was not arrested for DUI/alcohol and the officer did not testify to any suspicion that alcohol was involved, the trial court noted that "[e]ven the paramedics, according to the officer's testimony, indicated they didn't even smell any alcohol." In addition, although the officer tested for the presence of a drug, there was no evidence that "this particular individual" had taken "this particular drug" or that it was "in their [*sic*] system, and not related to him being a diabetic, and *** having an

accident." Concluding, the trial court stated that, to show probable cause, "an officer must also show the [effects] of the drug on the individual that he found, and none of that was done." The trial court denied the State's motion to reconsider.

¶ 14 The appellate court acknowledged the facts regarding "(1) the physical symptoms defendant was presenting, (2) the substance in defendant's wallet, (3) the syringe, (4) the track mark, and (5) the Red Bull can which tested positive for opiates." Nevertheless, the appellate court affirmed, agreeing with the trial court that these facts were insufficient to establish probable cause for an arrest for DUI/drugs because the officer "had no training or experience that would enable him to distinguish between a diabetic reaction and a drug reaction." 2017 IL App (3d) 160025, ¶ 11. The appellate court further noted that defendant's physical symptoms were reported to the officer by the paramedics; the officer did not directly observe them. *Id.* ¶ 14. The court questioned whether the NARK swipe test was properly performed because the officer testified it tested positive for opiates while cocaine is not an opiate. *Id.* Finally, a person with no specialized training could not properly opine on the "detection of controlled substances," unlike the detection of alcohol use, the effects of which are "commonly known." (Internal quotation marks omitted.) *Id.* ¶ 15.

¶ 15 The dissent noted that the arresting officer need not have been "absolutely correct" in his conclusion that the driver was under the influence of drugs; he need only have been reasonable in his assessment. *Id.* ¶ 24 (Schmidt, J., dissenting). The dissent also made the point that the defendant did not testify at the rescission hearing, so the only evidence regarding his alleged diabetes was the officer's testimony that defendant said he was diabetic. Based only on that uncorroborated statement, the trial court and the appellate court believed that the defendant was diabetic and that his symptoms could have been caused by this medical condition. *Id.* ¶ 25. Yet, the dissent noted, defendant had the burden of proof at that stage of the proceedings, and he failed to put on any evidence to support his statement that he was diabetic. Indeed, the dissent observed, defendant was hardly "the first drug user to tell police he is diabetic upon being found with a hypodermic syringe." *Id.* ¶ 28.

¶ 16 In its modification of the opinion upon denial of rehearing, the majority responded to the dissent, noting that the trial court found that defendant met his burden of showing a *prima facie* case for rescission, "as evidenced by its denial of the State's motion for directed finding." *Id.* ¶ 19 (majority opinion). The appellate court further stated that, because the State did not present additional evidence after its motion for directed finding was denied, it did not meet its burden of proof. *Id.* The court limited its holding to situations where the officer lacked "any training or experience in DUI drugs and defendant provided an alternative explanation of diabetes" via the officer's own testimony. *Id.* In such a circumstance, the officer "would not have been able to form a reliable opinion on the cause of defendant's condition." *Id.* Because the State "failed to rebut" the defendant's *prima facie* case for rescission, rescission was proper. *Id.* However, had the officer "had any experience or training or had the State provided some evidence to rebut the rescission, the outcome might have been different." (Emphasis in original.) *Id.*

¶ 17 ANALYSIS

¶ 18 A motorist may request a judicial hearing for rescission of a statutory summary suspension in a civil proceeding, subject to civil procedure rules. 625 ILCS 5/2-118.1(a) (West 2014). The

scope of the hearing is limited to four specific statutory grounds for rescission. One of the issues that may be raised is "whether the officer had reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle upon a highway while under the influence of alcohol, other drug, or combination of both." *Id.* § 2-118.1(b)(2).

¶ 19 This court has equated the "reasonable grounds" standard with the probable cause standard applied in the context of search and seizure under the fourth amendment. *People v. Wear*, 229 Ill. 2d 545, 560, 563 (2008). Under this standard, probable cause exists when the facts known to the officer at the time are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime, based on the totality of the circumstances. The standard is the probability of criminal activity, not proof beyond a reasonable doubt or even that it be more likely than not. *Id.* at 563-64.

¶ 20 The motorist has the initial burden of establishing a *prima facie* case for rescission. If he does so, the burden shifts to the State to come forward with evidence justifying the suspension. *Id.* at 559-60; see also *People v. Orth*, 124 Ill. 2d 326, 338, 340 (1988) (motorist has initial burden of making *prima facie* case for rescission; to make *prima facie* case, defendant must present evidence to support at least one of the statutory grounds for rescission).

¶ 21 When reviewing a decision to rescind a statutory summary suspension, we apply the two-part standard of review applicable to review of suppression hearings. *Wear*, 229 Ill. 2d at 561. The trial court's factual findings are reviewed under the manifest weight of the evidence standard, while the ultimate legal ruling regarding rescission is reviewed *de novo*. *Id.* at 561-62.

¶ 22 We note that the trial court's statement that it would review the evidence in the light most favorable to the defendant at the *prima facie* stage was incorrect. Because the defendant has the burden at this stage, the trial court may not favor his case in this manner.

¶ 23 As appellant, the State formulates this issue for this court as whether, regardless of the officer's training or experience, the presence of drug-related evidence in the defendant's vehicle and on his person, along with his physical symptoms, provided reasonable grounds for the arrest. We conclude, however, that a more precise formulation of the issue is whether defendant made a *prima facie* case that the officer lacked reasonable grounds to arrest him for DUI/drugs. This requires us to answer two questions. First, must an officer be qualified as an expert to testify regarding his inference from the totality of circumstances that a motorist was driving under the influence of drugs? And, if not, did the totality of the circumstances in the present case provide reasonable grounds for the arrest of defendant for DUI//drugs?

¶ 24                                    *The Need for Expert Testimony*

¶ 25 Under our rules, a witness who is not an expert may testify to his opinions or inferences unless they are "based on scientific, technical, or other specialized knowledge." Ill. R. Evid. 701 (eff. Jan. 1, 2011). If such knowledge is relied upon, the witness must be qualified as an expert. Ill. R. Evid. 702 (eff. Jan. 1, 2011).

¶ 26 The trial court found that the officer lacked probable cause to arrest defendant for DUI/drugs because he was not qualified as an expert on the effects of drug use. Similarly, the appellate court concluded that a person with no specialized training could not properly opine on the "detection of controlled substances," unlike the detection of alcohol use, the effects of which are "commonly known." (Internal quotation marks omitted.) 2017 IL App (3d) 160025,

¶ 16. In reaching this conclusion, the appellate court relied, in part, on *People v. Shelton*, 303 Ill. App. 3d 915 (1999), and *People v. Stout*, 106 Ill. 2d 77 (1985). 2017 IL App (3d) 160025, ¶ 16.

¶ 27    In *Shelton*, an officer testified at a criminal jury trial that the defendant was under the influence of drugs, basing his conclusion on the manner in which he was driving, his conduct during the traffic stop, his failing all of the field sobriety tests given, and his statement to the officer that he was " 'on Tylenol 3 with codeine.' " *Shelton*, 303 Ill. App. 3d at 917-18. During the traffic stop, the defendant's behavior included telling the officer that he did not have a driver's license before giving him the license, his suggestion that the officer should go for a ride with him, his statement that he was " 'getting ready to run' " followed by a statement that he was just kidding, his constant talking, his inability to stand still, his lack of balance, and his threats against the officer and his family. *Id.*

¶ 28    After finding that the evidence was sufficient to prove the defendant guilty of DUI/drugs beyond a reasonable doubt (*id.* at 922), the appellate court reversed the conviction on three grounds, one of which was that the State did not lay a proper foundation for the officer's opinion testimony that the defendant was under the influence of drugs (*id.* at 926-27). The court stated that, while a lay person could testify regarding alcohol intoxication, "the effects of drugs are not commonly known, and training and experience are necessary to understand their effects on people." *Id.* at 925. The court also noted that the officer had " 'limited training' " in detecting drug use and lacked "extensive personal experience with drug users." *Id.* at 926.

¶ 29    We have reservations about the court's analysis in *Shelton*. Although it found the evidence presented sufficient to support the jury's verdict beyond a reasonable doubt, the appellate court in that case nevertheless commented that the trial court found " 'no evidence *** in the record' " of the effects of any drugs (*id.*), apparently discounting the defendant's speeding, his odd and agitated behavior during the traffic stop, and his failure of field sobriety tests (*id.* at 917-18). While such conduct is not always indicative of drug intoxication, it was consistent with the defendant's being under the influence in light of his admission that he was "on" a prescription pain killer. We, thus, disagree with the *Shelton* court that expert testimony was necessary to present to the jury the officer's assessment that the defendant was under the influence. To the extent that *Shelton* requires expert testimony in every case in which an officer's finding of probable cause is based on his or her inference from the totality of circumstances that the defendant was under the influence of drugs, it is hereby overruled.

¶ 30    Turning to *Stout*, the defendant argues that our holding in that case stands for the proposition that "skill and knowledge are essential to an officer's determination of whether probable cause exists" and that the individual police officer's training and experience "are determinative in showing that the officer's decisions were not based on hunches and prejudices." He mischaracterizes our holding.

¶ 31    In *Stout*, this court stated that an "officer's experience and training in the detection of controlled substances" must be taken into account, not that expertise and specialized training are essential or determinative. *Stout*, 106 Ill. 2d at 87. In that case, the police officer conducted a warrantless search of the defendant during a traffic stop after he detected the odor of burning cannabis emanating from his car. *Id.* at 81. The trial court granted the defendant's motion to suppress the drugs found during the search, and the appellate court affirmed. The sole issue before this court was "whether the detection of the odor of cannabis emanating from the

- 6 -

defendant's vehicle gave the arresting officer probable cause to conduct a warrantless search." *Id.* at 82.

¶ 32    This court noted that what "constitutes probable cause for searches and seizures must be determined from the standpoint of the arresting officer, with his skill and knowledge, rather than from the standpoint of the average citizen under similar circumstances." *Id.* at 86. The officer testified that he had smelled burning cannabis on numerous occasions during his seven years of experience as a patrol officer. *Id.* at 87. Holding that this was a sufficient basis to establish probable cause, this court rejected the dissent's argument that additional corroboration of the presence of cannabis was required. *Id.* at 88. We did not require expert testimony or evidence of specific training to support the officer's finding of probable cause in every case where probable cause is based on the officer's assessment regarding the presence or use of drugs.

¶ 33    Further, *Stout* is consistent with the standard that probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a "reasonably cautious person" to believe that the arrestee has committed a crime, based on the totality of the circumstances. See *Wear*, 229 Ill. 2d at 563-64. A "reasonably cautious person" is not an "average citizen" or the familiar "reasonable person." As we noted in *Stout*, the question of probable cause must be viewed from the standpoint of the arresting officer, acting with reasonable caution.

¶ 34    In the end, *Stout*'s holding goes to the credibility of the officer's testimony regarding probable cause. An officer with many years of experience or with specialized training relevant to the issue may be more credible than a rookie. That said, nothing in our precedent requires expert testimony in *every* case involving the question of whether a defendant was under the influence of drugs. The issue in *Stout* was the reliability of the officer's conclusion that the odor he smelled was burning cannabis and not incense, stale food, or bad cologne. His experience and personal familiarity with the scent of burning cannabis were relevant to the existence of probable cause and were properly taken into consideration by the court.

¶ 35    In some circumstances, expert testimony regarding the basis for an officer's finding of probable cause is required. In *People v. McKown*, 236 Ill. 2d 278 (2010), the defendant was convicted of DUI/alcohol, based in part on the results of the horizontal gaze nystagmus (HGN) test performed by the arresting officer. The defendant argued on appeal that the HGN test did not meet the *Frye* standard for admissibility of scientific evidence. We held that "evidence of HGN field-sobriety testing, when performed according to *** protocol by a properly trained officer, is admissible under the *Frye* test for the purpose of showing whether the subject has likely consumed alcohol and may be impaired." *Id.* at 306. "A properly trained police officer who performed the HGN field test in accordance with proper procedures may give expert testimony regarding the results of the test." *Id.*

¶ 36    Although we found that the HGN test met the *Frye* standard, this court reversed because a proper foundation had not been laid for the police officer's testimony regarding the test he administered. Because the record contained other evidence that could support a guilty verdict even without the HGN evidence, the case was remanded for a new trial. *Id.* at 315.

¶ 37    In the present case, there is no question that the defendant was impaired. The probable cause question is whether the relatively inexperienced officer could have reasonably concluded that the defendant's obvious impairment was due to his use of drugs. Had the officer

conducted field sobriety tests, his experience and expertise in conducting such tests and interpreting the results would be at issue. However, no such tests were conducted, and the results of such tests were not the basis for the arrest. The officer's conclusion that defendant was under the influence of drugs was not based on scientific, technical, or specialized knowledge that required specialized training or experience.

¶ 38    The trial court and the appellate court held categorically that a police officer could not opine as to whether a motorist was under the influence of drugs without being qualified as an expert witness. We reject this conclusion, which is not supported by our precedent.

¶ 39                    *Totality of the Circumstances*

¶ 40    Having rejected the lower courts' insistence on expert testimony in this case, we turn to the question of whether defendant made a *prima facie* case that the officer lacked probable cause to arrest him for DUI/drugs. This question requires assessment of the totality of the circumstances. *Wear*, 229 Ill. 2d at 563-64.

¶ 41    The offense of DUI/drugs requires that the individual "drive or be in actual physical control" of a vehicle while "under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving." 625 ILCS 5/11-501(a)(4) (West 2014). Defendant was behind the wheel of the vehicle, with the motor running, on Route 52, so he was in actual physical control of a motor vehicle on a state highway. Clearly, he was incapable of driving safely, having driven his sport utility vehicle off the road while semiconscious. The only question is whether he was impaired as the result of a medical emergency, the ingestion of drugs or alcohol, or some combination thereof.

¶ 42    The underlying facts are not in dispute. Thus, we are not considering whether the trial court's factual findings were against the manifest weight of the evidence. Our review is *de novo*, considering whether the trial court properly found that defendant made a *prima facie* case for rescission. *Wear*, 229 Ill. 2d at 561-62.

¶ 43    First, defendant's physical condition was consistent with drug use. The trial court, however, overlooked defendant's semiconscious state and his disorientation, which a reasonably cautious person might suspect was due to drug or alcohol ingestion. The appellate court also discounted defendant's physical symptoms because the officer "never observed defendant and only knew these symptoms by speaking to the paramedics." 2017 IL App (3d) 160025, ¶ 14. However, the officer did observe the defendant at the scene and at the hospital, where they spoke. Further, hearsay is a permissible basis for a finding of probable cause. *People v. Macias*, 39 Ill. 2d 208, 213 (1968) (probable cause "may be founded on hearsay evidence" and "is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act"); see also *People v. Horine*, 2017 IL App (4th) 170128, ¶ 16 (in hearing on defendant's petition to rescind statutory summary suspension, "the officer's testimony, even if it includes hearsay, is permissible as it provides the court with the necessary information to rule on the petition. Although such testimony may constitute impermissible hearsay at trial, such testimony is permissible in this setting."). Indeed, if this were not the case, a police officer could not find probable cause based on the statement of a victim or a witness to a crime. Thus, the officer properly relied on his own observations, information provided by the paramedics, and his observations of their interaction with defendant. While defendant's physical condition, standing alone, did not demonstrate that

his impairment was drug-induced, it was consistent with drug use and supports the officer's conclusion.

¶ 44    Second, the officer performed a swipe test on the burned Red Bull can and detected the presence of opiates. The appellate court found it "curious" that a "Cocaine ID" test would be "used to test for opiates when cocaine is not an opiate," citing *People v. Vernor*, 66 Ill. App. 3d 152, 154-55 (1978), for the proposition that opiates are narcotic drugs while cocaine is not. On this basis, the appellate court concluded that "it is unclear whether Beaty even administered the correct type of test, and if so, whether he administered it correctly." 2017 IL App (3d) 160025, ¶ 14.

¶ 45    However, while the appellate court stated that the officer conducted a "NARK Cocaine ID Swipe" of the residue, the officer did not mention the word "cocaine" in his testimony. He twice referred to the "NARK swipe" and both times stated that it tested positive for "opiates." The only mention of a "Nark Cocaine ID Swipe" was by the State's Attorney on cross-examination, when asking the officer about the swipe test. If anyone misspoke, it was the State's Attorney, not the officer. We note that NARK tests are available for a variety of substances, including opiates and cocaine. See *Nark II Presumptive Drug Tests*, Evident, Inc., https://www.shopevident.com/category/drugs-narcotics/nark-ii-presumptive-drug-tests (last visited Sept. 17, 2018) [https://perma.cc/38FN-WSVN]. Thus, the appellate court's inference from the testimony is unfounded. The officer performed a swipe test for opiates, which revealed the presence of opiates.

¶ 46    Further, defendant did not offer an innocent explanation for the presence of the burn-marked metal can, and none is readily apparent. Even a rookie police officer would be aware of this commonly known device for "cooking" drugs prior to injection, as would any person who watches crime dramas on film or television. Combined with defendant's physical and mental state, the positive swipe test for opiates supports probable cause for arrest for DUI/drugs.

¶ 47    Third, other evidence showed the likely, or at least possible, presence of illicit drugs. The State asserts that the appellate court majority erred by giving "no evidentiary weight" to the packet of brown granular substance the officer found in defendant's wallet merely because test results of the substance were not available at the time of the hearing. Instead, the State argues, the presence of the substance was a factor supporting probable cause to conclude that defendant was under the influence of drugs. In support of this position, the State cites *People v. Davis*, 33 Ill. 2d 134, 137 (1965), for the proposition that the presence of a substance that might be illicit is sufficient grounds to make a drug-related arrest, even though the substance had not yet been tested.

¶ 48    The State's reliance on *Davis* overlooks the fact that defendant was not being arrested for possession of illegal drugs. Rather, he was arrested for driving under the influence of drugs. Although it was reasonable under the circumstances for the officer to suspect that the substance was an illicit drug, the mere presence of the unidentified substance does not—standing alone—provide reasonable suspicion that the individual in possession of the substance was under the influence. However, the packaging, the location of the small plastic bag, and the appearance of its contents support the officer's inference that the driver was drug-impaired, especially considering other circumstances. Indeed, given the presence of this

suspicious substance and the absence of insulin and a blood glucose meter in the vehicle, it was a reasonable inference that the defendant had recently injected a substance other than insulin.

¶ 49 Fourth, there was evidence of intravenous drug use by the defendant. The officer's testimony, which alluded to a "fresh" track mark, does not clearly distinguish between the sort of "track marks" that are caused by repeated intravenous drug use and a single mark on his arm consistent with a recent intravenous injection, as by using the syringe found in the vehicle. Both the trial court and the appellate court accepted as fact that the defendant's arms showed track marks indicative of repeated intravenous injections. Because this evidence was elicited by the defendant, any failure to clarify is his responsibility. Thus, on the record before us, based on testimony elicited by the defendant, we conclude that he had not only a mark showing a recent intravenous injection but also track marks indicative of repeated intravenous drug use.

¶ 50 That such track marks are frequently seen in users of illegal drugs is a matter of common knowledge. Courts frequently accept such testimony without the need for explanation by an expert. See, *e.g.*, *People v. House*, 232 Ill. App. 3d 309, 314 (1992) (defense counsel, arguing that defendant was eligible for Treatment Alternatives to Street Crime (TASC) sentencing for burglary, called court's attention to " 'track marks in his arm' "); *People v. $1,002 United States Currency*, 213 Ill. App. 3d 899, 901 (1991) (officer "observed 'track marks,' or collapsed veins"; defendant admitted to officer that he was a " 'junky' ").

¶ 51 Both the trial court and the appellate court concluded that these track marks could have been caused by regular injections of insulin for diabetes. If they were basing their conclusions on what they believed was common knowledge, they were incorrect.[2] Absent common knowledge, they lacked any evidentiary basis for this conclusion. Indeed, the trial court and the appellate court demanded a level of expertise from a police officer that they lacked, yet they opined, inaccurately, on the technique for insulin injection. At oral argument before this court, defense counsel acknowledged that insulin is not injected intravenously and, thus, cannot cause the kind of track marks associated with illegal drug use.

¶ 52 Finally, the lower courts gave substantial weight to defendant's uncorroborated statement to the officer that he was diabetic, presumably to explain the presence of the used syringe.

¶ 53 We begin by noting the dissent's observation that "[i]f the trial court believed anything, it could only believe that the officer truthfully testified," that the defendant said he was diabetic. 2017 IL App (3d) 160025, ¶ 25 (Schmidt, J., dissenting). Because defendant did not testify at the hearing, the trial court could make no assessment of the credibility of his statement to the police officer that he was diabetic.

¶ 54 Defendant did not put on evidence that he told the paramedics at the scene that he was diabetic or that his condition was a result of an episode of high or low blood sugar. Had he done so, or had he been wearing a medic-alert bracelet, the paramedics would have acted accordingly. A simple blood test would have revealed his blood sugar level, and they would have started appropriate treatment immediately. A reasonably cautious officer, observing such

---

[2]Insulin is injected subcutaneously into the fatty layer between skin and muscle, not intravenously. If not a matter of common knowledge, this information is readily available. See *Drugs and Supplements: Insulin (Parenteral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/insulin-parenteral-route/proper-use/drg-20069501 (last updated Jan. 1, 2016) [https://perma.cc/23TA-FE3T].

medical intervention, would have considered whether the defendant's condition was caused, at least in part, by his medical condition. Instead of seeking immediate treatment, however, the defendant waited until he spoke to the officer at the hospital at the time of his arrest to mention his alleged medical condition.

¶ 55    Defendant's statement to the officer that he is diabetic was not corroborated by any physical evidence or circumstance known to the officer at the time of the arrest. The officer found evidence of opiates in the vehicle but no insulin or blood glucose meter. In sum, there was no evidence available to the officer at the time of the arrest that defendant's impairment may have been due, even in part, to diabetes.

¶ 56    The appellate court expressed concern about the officer's inability to distinguish between symptoms of diabetes and drug use. We do not expect police officers in the field to make differential diagnoses—only to determine based on the totality of the circumstances whether an impaired driver is under the influence of alcohol or drugs, even if he or she may also have a medical condition.

¶ 57    We also reject defendant's position that probable cause was lacking because it was based on "mere proximity to suspicious items." In this case, the totality of the circumstances supports the officer's conclusion that defendant had been driving under the influence of drugs. The semiconscious defendant showed signs of recent intravenous injection, he possessed a used syringe, and the only injectable substance present was an opiate, apparently prepared for injection in the depression on the bottom of the aluminum beverage can.

¶ 58    When the reliability of blood alcohol test results was at issue, this court stated that a *prima facie* case for rescission could be made by producing evidence "of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol." *Orth*, 124 Ill. 2d at 341. Thus, in the present case, where the motorist/defendant challenged the reasonableness of the officer's belief that he was under the influence of drugs, sufficient evidence would consist of any circumstance that tends to cast doubt on the reasonableness of the officer's inference, which could include credible testimony by the motorist that he was not, in fact, under the influence of drugs.

¶ 59    The trial court found that the defendant met this burden based solely on the testimony of the officer, without putting on any evidence to support his claim that his impairment was or could have been a result of his medical condition. He based his case entirely on the claim that the officer was not qualified to conclude that he was under the influence of drugs. The appellate court noted that the trial court found that the burden had shifted to the State to justify the license suspension. Because the State rested its case without providing "any evidence to justify the suspension," the appellate court concluded that the State did not meet its burden of proof. 2017 IL App (3d) 160025, ¶ 19.

¶ 60    Applying the standard we established in *Orth*, we find no evidence of any circumstance that tends to cast doubt on the reasonableness of the officer's inference. Thus, we conclude that the trial court erred in finding that the burden shifted to the State. The defendant failed to present a *prima facie* case. Thus, the trial court erred by not granting the State's motion for a directed finding.

¶ 61                                    CONCLUSION

¶ 62      Expert testimony is not required in every case for an officer to testify to his opinion that a motorist was under the influence of drugs based on his inference from the totality of the circumstances. When, as here, the totality of circumstances at the time of the arrest is sufficient to lead a reasonably cautious person to believe that an individual was driving under the influence of drugs, probable cause exists. Thus, defendant failed to make a *prima facie* case that the rescission of his license was improper, and the burden did not shift to the State.

¶ 63      For the foregoing reasons, we reverse the judgment of the appellate court, vacate the rescission order entered by the trial court, and remand to the trial court for further proceedings consistent with this judgment.

¶ 64      Appellate court judgment reversed.

¶ 65      Circuit court judgment reversed.

¶ 66      Cause remanded.